IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William James Clark, #11798-055, | C/A No: 1:13-556-MGL-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| Doctor V. Loranth, Clinical Director; Warden Cruz; Associate Warden Johnson; and, Associate Warden Langford, | |
| Defendants. | |

Plaintiff William James Clark, proceeding pro se and in forma pauperis, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Plaintiff sues Dr. Victor Loranth ("Dr. Loranth"), Warden Cruz ("Cruz"), Associate Warden Johnson ("Johnson"), and Associate Warden Langford ("Langford") (collectively "Defendants") for alleged deliberate indifference to his serious medical needs while incarcerated at the Federal Correctional Institution in Williamsburg, South Carolina ("FCI-Williamsburg"), a facility of the Bureau of Prisons ("BOP"). This matter comes before the court on Defendants' for summary judgment. [Entry #42].[2] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if

---

[2] Defendants' motion is entitled "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." Plaintiff was advised that the court intended pursuant to Fed. R. Civ. P. 12(d) to treat the motion as one for summary judgment under Fed. R. Civ. P. 56 because Defendants presented matters outside of the pleadings related to their affirmative defenses.

he failed to respond adequately to Defendants' motion. [Entry #43]. The motion having been fully briefed [Entry #46], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

I.    Factual and Procedural Background

Plaintiff alleges that on October 6, 2012, he began coughing up blood and was sent to the emergency room, where the doctor informed Dr. Loranth that Plaintiff needed to see a specialist. [Entry #1 at 3]. Dr. Loranth allegedly said that Plaintiff was a "faker" and refused to send him to a specialist. *Id*. According to the complaint, after complaining to Health Services Administrator Whitehurst, Plaintiff saw a throat specialist and a CT scan was performed. *Id*. Plaintiff further alleges that, around the same time, his medical records arrived from Alaska, and included a mammogram that showed two potentially cancerous masses. *Id*. According to the complaint, Whitehurst scheduled Plaintiff for a mammogram, but Dr. Loranth cancelled the test. *Id*. Plaintiff alleges that Dr. Loranth has also either reduced or stopped Plaintiff's medications, which actions Plaintiff believes are retaliatory. *Id*. Plaintiff claims, "[M]y life is in danger from the staff here and from my health care." *Id.* at 4. Plaintiff requests monetary and injunctive relief. *Id.* at 5.

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow

3

the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

Plaintiff is bringing suit against federal agencies and federal correctional officers. As such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241–42 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1310, n. 8 (M.D.Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

1.  Monetary Relief in Official Capacity Claims

To the extent Plaintiff sues Defendants in their official capacities for monetary relief, Defendants assert that the court lacks subject matter jurisdiction. Under the

principle of sovereign immunity, individuals may not sue the United States or its agencies without their consent. *See FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994) (declining to extend *Bivens* to permit suit against a federal agency); *Global Mail Ltd. v. U.S. Postal Service*, 142 F.3d 208, 210 (4th Cir. 1998) (federal governmental entity entitled to sovereign immunity unless Congress waives that immunity and consents to suit). A suit against Defendants in their official capacities would be tantamount to a suit against the government itself, *Dugan v. Rank*, 372 U.S. 609, 620 (1963), and "the United States has not waived sovereign immunity in suits claiming constitutional torts." *Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999). Therefore, the undersigned agrees with Defendants that the court lacks subject matter jurisdiction over any claims Plaintiff may be asserting against Defendants in their official capacity for monetary damages.

2.      Exhaustion of Administrative Remedies

Defendants have moved for summary judgment based in part on the defense of Plaintiff's failure to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life,

5

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement that must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741.

No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant." *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005).

The BOP has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 *et seq*. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level (BP-8). 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden (BP-9). 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director (BP-10). 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel (BP-11). *Id*. Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a).

6

Defendants argue that Plaintiff did not exhaust his administrative remedies related to the claims in the complaint. Specifically, Defendants submit the affidavit of Tami Cassaro, Supervisory Attorney for the BOP, who indicated the following grievance activity by Plaintiff since the earliest of the incidents of which he complains. Records reveal that on or about October 22, 2012, the Regional Office received an appeal from Plaintiff of a decision from the Discipline Hearing Officer ("DHO") in regard to an incident report he received at the institution. [Entry #42-3 at 15]. There is no indication by Plaintiff or Defendants that this grievance had anything to do with the incidents described in the complaint.

On February 11, 2013, Plaintiff filed an administrative remedy at the institutional level to appeal an incident report filed against him for refusing an order. *Id*. at 17–19. Warden Cruz responded to Plaintiff's request and upheld the decision of the Unit Discipline Committee. *Id*. Plaintiff appealed to the Regional Office, which responded on March 28, 2013, by remanding the case back to the institution for a rehearing. *Id*. at 23–25. Plaintiff was advised that after the rehearing was completed, if he elected to appeal the disciplinary action, he should file such an appeal directly to the Warden. *Id*. There is no indication that Plaintiff submitted an administrative remedy to Cruz in regard to the rehearing or appealed the Regional Office's response to the Central Office.

On February 25 and 28, 2013, respectively, the Regional Office received Regional Administrative Remedy Appeals from Plaintiff, marked sensitive, (1) seeking a medical transfer and (2) alleging denial of medical care and retaliation. *Id*. at 20, 21. On February

28, 2013, these appeals were rejected because they were not sensitive in nature, and should have been filed at the institution initially. *Id*. Plaintiff was informed that misconduct claims are taken seriously and reviewed in accordance with policy. *Id*. Plaintiff was further informed that he would not be given further information regarding the disposition. *Id*. at 21. Plaintiff resubmitted his claim of denial of medical care and retaliation to the Regional Office on March 1, 2013. *Id*. at 22. The remedy was again rejected for the same reasons, i.e., not sensitive in nature and will not be given further information as to disposition of staff misconduct allegations. *Id*. Thereafter, there is no evidence that Plaintiff attempted to submit his remedy to the institution. Plaintiff filed this action in this court on March 4, 2013. [Entry #1].

In his response to Defendants' motion, Plaintiff argues generally that he filed informal resolution forms and administrative remedy forms (BP-9s) to which he did not receive responses and which he believes were destroyed. [Entry #46 at 4–5]. Plaintiff does not provide any dates on which he allegedly filed these administrative remedies or provide any other information about the specific facts contained in the administrative remedies. *Id*.

Plaintiff's naked assertion that he filed BP-9s that were destroyed, without further factual enhancement, is insufficient to overcome Defendants' evidence. If Plaintiff is allowed to proceed to federal court by claiming, without any evidence, that BOP officials destroyed his BP-9s, the practical effect is an erosion of the requirement of exhaustion, as the *Woodford* court warned. Defendants bear the burden of proof when asserting an

affirmative defense of failure to exhaust administrative remedies. Defendants will never be able to definitely prove a negative—that the proper grievance was not filed—in the face of a bald assertion that BOP officials destroyed the grievance. However, Defendants have met their burden of proof in having demonstrated the absence of an entry in records kept in accordance with the BOP's regularly-conducted activities. *See* F.R.E. 803(7) (evidence admissible that a matter is not included in one's business records to prove the nonoccurrence or nonexistence of the matter). Furthermore, it is clear that Plaintiff filed at least one BP-9 that was not destroyed and was successfully appealed to the Regional Office. Plaintiff filed an appeal to the Regional Office claiming that his institutional remedies were destroyed, despite Plaintiff having filed other appeals directly with the Regional Office, albeit improperly. Therefore, based on the record presented, the undersigned recommends Defendants' motion for summary judgment be granted for Plaintiff's failure to exhaust his administrative remedies.

### 3.     Liability of Supervisory Defendants

In his complaint, Plaintiff fails to allege any individual involvement of defendants Cruz, Johnson, and Langford. Plaintiff also fails to allege that Cruz, Johnson, and Langford personally acted to retaliate against him. To bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with treatment by medical personnel, or tacitly authorized or were indifferent to the prison physician's misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Prison

personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Therefore, Plaintiff has failed to plead facts sufficient to state a claim against these supervisory defendants for alleged constitutional injuries inflicted by their subordinates. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999); *see also Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice). Therefore, the undersigned also recommends defendants Cruz, Johnson, and Langford be granted summary judgment on Plaintiff's claims of supervisory liability.

III.     Conclusion and Recommendation

For the foregoing reasons, Defendants' motion for summary judgment [Entry #42] be granted and this case be dismissed.

IT IS SO RECOMMENDED.

*/s/ Shiva V. Hodges*

March 14, 2014
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).